Spencer, J.
A. Weinstoek owned an undivided half interest in lot 8, square 59 of Shreveport. His minor children owned the other undivided half.
On 27th June, 1873, there was an aet passed between him and S. Cohen, in which it was declared in substance, that they had agreed as* follows:
First — That Weinstoek was to build on said lot a double two story brick store, giving its dimensions. That to assist in said building Cohen agreed to loan and advance to said Weinstoek, at stated times, at stated' installments, $9000; that if Cohen failed to deliver said installments within ten days after their maturities, he is to pay Weinstoek certain d'amages;that said building shall be completed by 1st October, 1873; that in consideration of said loan, and in lieu of interest thereon, said Weinstoek agrees and binds himself to lease and hereby leases to said Cohen for four years, from the completion of said building, one of the said double stores and certain other rooms — said Cohen reserving the right to sublet it; that Cohen shall be put into possession 1st October, 1873, and if' not Weinstoek shall pay him $125 per month until he is put into possession. That on the expiration of the loan Weinstoek is to repay the $9000, and Cohen to retain possession till repaid. That in the event said building should during the lease be destroyed, said loan shall be immediately payable; provided Weinstoek may within six months rebuild, but shall during that delay pay Cohen $125 per month. If he-should not rebuild Cohen is to have $125 per month until the $9000 is* fully repaid to him.
That “ in order to secure the prompt fulfilment of all the obligations by him herein assumed,” Weinstoek “specially mortgages to Cohen, said lot No. 8, together with all the buildings and improvements thereon he may hereafter erect.”
This act was duly recorded same day in the mortgage office.
Weinstoek at once employed the plaintiff to furnish the material and construct said building, but no written contract was entered into. In January, 1874, after the completion of the building, Johnson took Weinstock’s two notes for the balance due him (some $1862 25) stating-therein the consideration. On 17th August, 1874, these notes were duly recorded in the mortgage office. In June, 1875, Johnson obtained judgment against Weinstoek on said notes, with recognition of his “ privilege, as builder and furnisher of materials, on lot 8, square 59).and also* on the buildings and improvements thereon.”'
*700 Execution having issued on this judgment, the sheriff seized “the undivided half interest of Weinstock in and to lot 8, in square 59, together with all of the buildings on the whole of said lot,” etc.
The lot and building were separately appraised, the former (one-half interest) at $1000, and the whole building at $10,000. The property was adjudicated at t'wo-thirds of appraisement to M. Cohen at $9333 33¿ in cash. M. Cohen claims to be holder as heir of the rights of S. Cohen, and we shall so treat him. Previous to this sale said M. Cohen filed this third opposition, claiming to be paid by preference the amount of a special mortgage to Swanson, held by him for $1612 50 and interest; also $9000, the amount of the mortgage given to S. Cohen. That opposition is now before us. This case was before us last term, and was remanded, to enable Cohen to show that the $9000 had been furnished under that agreement. We think the proof now shows that fact. Cohen’s claim of preference, under this $9000 mortgage, is resisted chiefly on two grounds.
First — That M. Cohen was. not a third person, but a privy, in the ■contract for building said house.
Second — That he had and could have no mortgage beyond the ■undivided half interest of Weinstock in the house and lot.
The judge a quo gave plaintiff preference over Cohen, on (we are told) the first ground. Cohen appeals.
It will be seen that the building was appraised at $10,000, and sold at two-thirds thereof, i. e. $6666 66£. So that if Cohen’s mortgage only operated on a half interest, there would be $3333 33, proceeds of the building, unaffected and ample to pay plaintiff’s privilege thereon.
Whilst we are not prepared to dissent from the views of the judge ■a quo on the first ground, we prefer to rest our concurrence in his decree on the second.
By the Roman law, one who made constructions on soil which he knew to belong to another, was presumed to be willing to lose his materials, and had no claim against the owner of the ground, who acquired an absolute right to whatever was erected on it. D. 11 L, 1 T. 71,(S12; Baldwin vs. Insurance Co., 2 R. 133.
By our law this absolute right has been qualified, as follows; If the person who makes the constructions knows he has no right to do so, in other words, is in bad faith, then the owner of the soil is not ■ owner of the constructions, unless he elects to take them. He may require their demolition or removal. But if he elect to keep them, they become his, and he owes the constructor the costs of material and the price of workmanship.
But if the constructor have built them in good faith, i. e. believing himself owner, or to have the right to do so, the owner of the soil built *701 upon has no right of election. He cannot refuse to keep the buildings. They are his, as part of the soil; but he is bound to reimburse the builder in one of two ways, of which he has choice, i. e., either by paying him the costs of material and price of workmanship, or by paying “ a sum equal to the enhanced value of the soil.” O. C. art. 508.
The builder in good faith is thus made as it were the negotiorum gestor of the owner of the soil, and the works constructed by him are considered as made for and on his (the owner’s) account and brings into operation the rule of article 505 C. C., whereby it is declared that “ the ownership of the soil carries with it the ownership of all that is directly above and under it.”
We think that one joint owner of land has a right to build upon and improve the common property; and must be considered therefore as building in good faith, and as the negotiorum gestor of his coproprietor, who thereby becomes obligated to reimburse and pay to the coproprietor who makes the improvements either the costs of materials and price of workmanship, or the enhanced value of the soil. The right of electing between these two modes of compensation protects the coproprietor from ill-advised and unnecessary improvements made by one of them. If the buildings, etc., constructed have cost more than they are worth, the coproprietor elects to pay only his part of the enhancement in value, received by the soil therefrom.
But as we have seen, where buildings have been constructed in good faith, they belong in every event to the owner of the soil. He cannot relinquish or refuse to-take them. Nor can the other party take them away. The only right the party building has, is a personal, movable action against- the owner for compensation and reimbursement. Under the operation of these principles it is therefore manifest that Weinstock only owned an undivided half of the house and of the lot; and that he also owned a right of action against his coproprietors for a sum of money in reimbursement of amounts expended by Mm as their negotiorum gestor. This right of action, this chose in action, was an incorporeal movable, not susceptible of mortgage, and not embraced in Cohen’s mortgage.
But the plaintiff’s privilege did operate upon the entire building. His judgment recognized this privilege and ordered the sale of the entire building, which could be, and was, sold separately and as an entity, under his claim, regardless of -the ownership or alienability of the soil. See Howard McKnight vs. the Parish of Grant. 30 An. 361.
There is no force in the position taken by Cohen, that Johnson had acquiesced in the original (first) judgment in his (Cohen’s) favor; which judgment was appealed from by Johnson, and reversed and annulled by this court, at its last term, without Oohen interposing such acquies *702 -cence as a bar to the appeal. If it ever existed he abandoned it. But we do not think it ever existed. To have allowed it, would have been to permit him to take advantage of his own wrong.
The decree of the court a qua, of 22d December, 1877, appealed ■from, does substantial justice; it is affirmed at costs of third opponent in both courts.